UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                                 **REPORT AND**
                                                          **RECOMMENDATION**

                                  Plaintiff,

v.                                                        21-CV-00398(LJV)(JJM)

PAOLO PROVENZI,
IKONICK COLLECTIONS LTD., and
MOHAMMED ALSALOUSSI,

                                  Defendants.

_____

        In December 2019, a valuable 1996 Ferrari F50 automobile, registered to defendant

Ikonick Collections Ltd. ("Ikonick"), an entity owned by defendant Mohammed Alsaloussi

(collectively, the "Ikonick defendants"), was encountered by United States Customs and Border

Patrol ("CBP") at the Peace Bridge Port of Entry in Buffalo, New York while being transported by

a commercial carrier from Canada into the United States. Complaint for Interpleader and Injunctive

Relief ("Complaint") [1], ¶¶6, 15. [1] A CBP investigation revealed that the automobile had been

reported stolen in Italy approximately 16 years earlier, in 2003, and had not been recovered.  Id.,

¶10.

        At the time of the theft, the automobile was owned by AUTOEXOTIC SAS di Paolo

Provenzi & C ("Autoexotic"), a since-dissolved Italian limited partnership between Paolo, Remigio

and Roberto Provenzi.  Provenzi Declaration [24-1], ¶¶4, 9; Dissolution Agreement [24-5] at 2.

After forfeiture proceedings were commenced by CBP, competing petitions for remission of the

_____

[1]     Bracketed references are to CM/ECF docket entries, and page references are to the CM/ECF
pagination.

seizure were filed by defendants Paolo Provenzi[2] and Ikonick. Complaint [1], ¶¶12-14. CBP denied Ikonick's petition and granted Provenzi's petition. Id., ¶¶16-17. However, the Ikonick defendants filed a claim of ownership to the automobile and posted a bond to halt the administrative forfeiture proceedings, which prompted the government to commence this interpleader action, alleging that it "is in great doubt as to which Claimant may be entitled to the Property". Id., ¶¶18, 20.

Before the court are Provenzi's motion for partial summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 [24] and the Ikonick defendants' motion for leave to amend their Answer to Provenzi's Counterclaims and Cross-Claims pursuant to Rule 15 [29]. Having reviewed the parties' submissions [24, 29, 31, 33-35] and heard oral argument on December 15, 2021 [36], I recommend that Provenzi's motion be denied, and that the Ikonick defendants' motion be granted in part and denied in part.[3]

## BACKGROUND

The parties' familiarity with the factual background of this case is presumed and has only been briefly set forth herein. See Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 434 n.7 (4th Cir. 2011) ("[c]ourts are not required to identify every piece of evidence they consider in making a decision"). Within months of the automobile's reported theft in Italy, it was registered in Japan, where it remained during a number of ownership transfers. Certificate of Car Registration [31-3] at 17-19. Roberto Provenzi states that in March 2019 he attended a meeting with Akihiro Orimoto, who offered 100,000 euros to withdraw the Interpol theft report so that the automobile's title would be clear, thereby rendering it legally exportable from Japan. Roberto

---

[2]    Unless otherwise indicated, all references to Provenzi are to Paolo Provenzi.

[3]    "[A] magistrate judge's denial of a motion to amend is generally treated as dispositive". Kraft v. Marriott International, Inc., 2021 WL 2587721, *2 (W.D.N.Y. 2021).

Provenzi's Declaration [33-8], ¶¶6-8.  Although that deal was refused and reported to Italian authorities (id.), Sabe Japan International Co. Ltd., the entity on whose behalf Orimoto was acting, sold and exported the automobile seven months later, in October 2019, to C.A.R. Leasing of Montreal, Canada.  *See* Canadian Customs Form [31-5] at 16.  The automobile was eventually registered to Ikonick in Alberta, Canada on November 14, 2019. [31-5] at 29.

   Alsaloussi reported to CPB that he used C.A.R. Leasing to assist with researching and importing the automobile from Japan.  *See* CBP's July 8, 2020 Decision [33-7] at 4.  Although Alsaloussi reported to CPB that he was unaware that the automobile was reported stolen, that claim, as CBP concluded (id. at 7), is difficult to reconcile with the sale documentation for the automobile, which expressly informed C.A.R. Leasing, Alsaloussi's intermediary, that it was "previously reported stolen in EU".  Sales Contract between Formula Selected[4] and C.A.R. [31-5] at 14. Alsaloussi also submitted no affidavit or declaration in connection with the pending motions to support the contention that he was unaware of the automobile's theft history.

   While documentation from both parties was produced in the CBP administrative proceedings, no discovery has yet occurred in this action.  Provenzi's pre-discovery motion seeks summary judgment on his First Counterclaim and Cross-Claim for replevin (Provenzi's Answer with Counterclaims and Cross-Claims [10] at ¶¶46-54) and Second Counterclaim and Cross-Claim for a declaratory judgment that he is, *inter alia*, the sole owner of the automobile. Id. at ¶¶55-58.  In opposing the motion, the Ikonick defendants argue that, pursuant to Rule 56(d), they are entitled to

---

[4]  CBP's July 8, 2020 Decision [33-7] denying Ikonick's petition for remission stated that "Formula Selected told CBP that it was contacted by a company called Meedo in Florida which stated that it wished to purchase the vehicle through C.A.R. Leasing.  Of note, the telephone number for Meedo was found to be that of Mr. Alsaloussi.  Meedo also provided CBP with an e-mail and attachments from . . . Orimoto . . . .  One of the attachments is a letter from Interpol dated April 23, 2019, stating that the vehicle was stolen in Italy on March 3, 2003, and cannot be sold".  Id. at 7.  *See also* September 16, 2019 e-mail from Orimoto to Steffan Frisk of Formula Selected [33-2] at 2 ("[t]he car has a solen history but it already passed over 15 years . . . . According to our Italian lawyer, the stolen record has been expired so you can sell it anywhere in Europe").

conduct discovery necessary to oppose the motion.  *See* Peterson Declaration [31-5].  They also

separately move [29] to amend their Answer to Provenzi's Counterclaims and Cross-Claims to

assert a statute of limitations defense.  The government takes no position on either motion.


## DISCUSSION

**A.    Provenzi's Motion for Summary Judgment**

"Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party seeking summary judgment has the burden to demonstrate that no genuine issue of

material fact exists.  In determining whether a genuine issue of material fact exists, a court must

examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-

movant.  Summary judgment is improper if there is any evidence in the record that could reasonably

support a jury's verdict for the non-moving party."  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir.

2003).

"Only in the rarest of cases may summary judgment be granted against a [party] who

has not been afforded the opportunity to conduct discovery."  Hellstrom v. U.S. Department of

Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000).  *See also* Diaz Reyes v. W.D. Henry & Sons, Inc.,

2019 WL 1723518, *5 (W.D.N.Y. 2019) ("[a] Rule 56(d)(1) request should ordinarily be granted

where [a party] has conducted no discovery"); Kelly v. Tan, 2013 WL 4811913, *4 (W.D.N.Y.

2013) ("no discovery has yet taken place in this action . . . . the Court could deny the motion on this

basis alone"); Walden v. Sanitation Salvage Corp., 2015 WL 1433353, *5 (S.D.N.Y. 2015)

("[c]ourts in the Second Circuit routinely deny or defer motions for summary judgment when the

non-movant has not had an opportunity to conduct discovery and submits an affidavit or declaration that meets the requirements set forth in Rule 56(d)").  This is not one of those rare cases.

Although the parties dispute which country's law applies (*see* Ikonick defendants' Response [31] at 19), it is unnecessary to resolve that issue at this time, since there are issues of material fact concerning the lawful ownership of the automobile that the Ikonick defendants are entitled to explore through discovery.  These include, for example, the circumstances surrounding the alleged theft of the automobile in 2003. *See* Kilpatrick v. Town of Davie, 2009 WL 10667060, *1 n.1 (S.D. Fla. 2009) ("[t]he Court need not discuss every issue of fact in a case when denying a summary judgment motion"); JaM Cellars, Inc. v. Wine Group LLC, 2020 WL 1904501, *4 (N.D. Cal. 2020) ("the Court has not endeavored to identify every disputed issue of material fact: the factual issues discussed above are simply examples of why summary judgment is not appropriate here").

The Ikonick defendants contend that "questions were raised regarding whether the 2003 'theft' was actually a dispute amongst the Provenzi family as to proceeds from the Vehicle's sale - perhaps for exportation directly to Japan or in an unrecorded sale to someone who later exported it to Japan". Ikonick defendants' Response [31] at 14 n. 9.  However, they fail to offer any evidence for that particular claim, and similar allegations were found unsubstantiated by CBP.  *See* CBP's July 8, 2020 Decision [33-7] at 7 ("according to the petitioner, an Italian police report had been 'filed by the Italian business partner who alleged that he was not compensated appropriately from the sale of the Ferrari to the Japanese dealer.'  However, these claims are inconsistent with the Italian police report and information that Ferrari provided to CBP.  The Italian police report does not state anything about such a dispute and the petitioner did not provide any evidence in support of

these claims.  Furthermore, CBP's investigation also did not uncover any reports of a business

dispute involving the vehicle").

        In any event, the Ikonick defendants are entitled to conduct discovery into the

alleged theft and subsequent registration of the automobile in Japan.  As they argue, the registration

in Japan and Canada constitutes at least some evidence of their lawful ownership of the automobile.

*See* Ikonick defendants' Response [31] at 5.  In support of that argument, the Ikonick defendants

rely on the Affirmation of Chie Kasahara [31-3], an attorney admitted to practice law in Japan, who

states that the purpose of automobile registration in Japan is to "review . . . the automobile's

ownership details" and to "ensure legal certainty of title to the automobile".  Id., ¶9.  Specifically,

she points to Article 8 of Japan's Road Transport Vehicle Act (Act No. 185 of 1951), titled the

"General Validity of Registration", which states that "[u]pon receipt of the written application . . .

the Minister of Land, Infrastructure, Transport and Tourism shall make a new registration, except in

the following cases.

    (i)      the applicant is not found to have ownership of the motor vehicle in question; . . .

    (iv)    when it is found that there is a false statement in the matters pertaining to the

              application." Id., ¶10.

In determining whether a vehicle can be exported, Japanese Customs similarly reviews "all

paperwork".  Id., ¶16.  According to Ms. Kasahara, a "presumption of regularity" should attach to

the conduct of the Japanese authorities.  Id., ¶12.  For purposes of this pre-discovery motion, I

agree.

        According to Provenzi, the automobile's original VIN was ZFFTA46B000105810.

Provenzi Declaration [24-1], ¶23.  It does not appear that the true identity of the automobile (*i.e.*, its

original VIN) was concealed during the registration process when Japanese authorities presumably

confirmed its ownership.  *See* Certificate of Car Registration ([31-3] at 17) identifying the automobile by its original VIN.   In fact, the subsequent registrations in Japan and Canada, and the exportation/importation of the automobile between Japan and Canada were all under its original VIN.  *See* Certificate of Car Registration (Japan) [31-3] at 17; Export Certificate (Japan) [31-5] at 7; Registration (Canada) [31-5] at 33; customs paperwork (Canada) [31-5] at 16. [5]

Given the existence of the reported theft of the automobile (under the same VIN) in the database of the International Criminal Police Organization ("Interpol") (*see* [33-2] at 7), "an international police organization with 194 member countries", Omari v. International Criminal Police Organization - Interpol, 2021 WL 1924183, *1 (E.D.N.Y. 2021), including Japan and Canada,[6] it is unclear at this point how the automobile could be registered in Japan without valid proof of ownership.[7] However, at this early stage of the litigation, before the Ikonick defendants have had any opportunity to conduct discovery (including into what documentation or representations were provided in registering the automobile in Japan), and giving them the benefit of every favorable inference (as I must), the existence of the Japanese registrations and subsequent Canadian registration of the automobile to Ikonick are sufficient to create a triable issue of material fact concerning its ownership.

---

[5]    Provenzi states that when the car was seized by CBP, it discovered through the National Insurance Crime Bureau "that the original VIN - ZFFTA46B000105810 - on the automobile had been replaced with a false VIN". Provenzi Declaration [24-1], ¶23.  However, there appears to be no record before me indicating that the car was ever registered, imported or exported with a VIN other than the original.  The Complaint for Interpleader and Injunctive Relief [1] alleges that "the VIN plate was highly suspect and did not appear to be affixed to the factory standard" (id., ¶8), but does not expressly allege that the VIN was false.

[6]    From https://www.interpol.int/en/Who-we-are/Member-countries (last checked on January 4, 2022).

[7]    It is also unclear why, if the automobile was openly registered in Japan under its original VIN, it could not have been readily located by law enforcement or its export stopped, especially after Provenzi learned from Orimoto that it was located in Japan and that Orimoto sought to export it.

Moreover, even if the record demonstrated that the Ikonick defendants were not the lawful owners of the automobile and therefore were entitled to no discovery on that issue, factual issues remain as to Provenzi's ownership interest in the automobile. Although Provenzi seeks the return of the automobile and a declaration that he is the "sole and exclusive owner of all right, title and interest in and to the Vehicle" (Provenzi's Second Counterclaim and Cross-Claim [10], ¶58), the Ikonick defendants are entitled to explore these issues in discovery.

Provenzi contends that his "ownership rights in the Vehicle are unassailable". Provenzi's Memorandum of Law [24-22] at 6. The fact that Provenzi has *some* ownership interest may be indisputable, but his entitlement to a declaration that he is the *sole* owner of the automobile is not clear on this record. While he now contends that he is the sole owner as the result of an agreement reached among the three partners of Autoexotic following its dissolution, that contention conflicts with his representation to CBP in May 2020 that he was appointed by Roberto and Remigio Provenzi as the "representative of the (dissolved) partnership" (Power of Attorney [24-9] at 33), as well as his attorney's representation that "[t]he partners are the rightful owners of the [automobile]". May 7, 2020 letter [24-9] at 3.

Provenzi argues that the November 20, 2015 Dissolution Agreement [24-5] makes him the sole owner of the automobile. *See* Roberto Provenzi Declaration [33-8], ¶4 ("Autoexotic was dissolved in November of 2015, at which time, all its contingent assets were distributed to Paolo who became the sole and exclusive owner of all rights, title and interest in them, including the Vehicle . . . . We also verbally agreed that in the event the Vehicle was ever recovered, the Vehicle would go to Paolo, exclusively"); Foglia Declaration [24-11], ¶9 ("[p]ursuant to the Dissolution [Agreement], the partners of Autoexotic agreed that 'any contingent assets and liabilities . . . will be borne by the general partner', identified therein as Provenzi . . . . The Vehicle itself is properly

regarded as a 'contingent asset' of the dissolved limited partnership, and to this extent, it became and is the property of Provenzi, as general partner of Autoexotic").

However, the Dissolution Agreement [24-5] fails to specifically identify the automobile, or state Provenzi is its owner. Instead, it broadly states that "any contingent assets and liabilities . . . will be borne by the general partner" (id. at 3), whereas Autoexotic had *two* "General/Unlimited Partners". *See* Provenzi's Statement of Undisputed Material Facts [24-21], ¶2; Provenzi Declaration [24-1], ¶3. In fact, the very next paragraph of the Dissolution Agreement identifies *Roberto* Provenzi, not Paolo Provenzi, as the general partner. [24-5] at 3 ("the accounting records and company documents will be kept at the home of the general partner, Mr. PROVENZI Roberto").

It is also curious why, if the Dissolution Agreement was intended to identify the automobile as one of the contingent assets belonging to Provenzi, a separate verbal agreement among the partners was necessary. Nor is any explanation given for why the partners of Autoexotic found it necessary to put their verbal agreement into writing approximately five and a half years later, in April 2021 (*see* Private Contact [24-7] at 2), *after* the initiation of this action.[8]

The Ikonick defendants are entitled to discovery on these, as well as other issues, including the alleged 2003 theft. Since they have not had that opportunity, at this stage "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

---

[8]     They may be considered minor errors, but the Private Contract ([24-7] at 2) memorializing the verbal agreement between the partners of Autoexotic that Provenzi would become the sole owner of the automobile does not identify the automobile by its correct VIN # (ZFFT46B000105810 vs. ZFFT*A*46B000105810), and Provenzi states that Autoexotic was formed in 2009 (Provenzi Declaration [24-1], ¶3) - *after* the alleged theft of the automobile.

**B.      The Ikonick Defendants' Motion for Leave to Amend**

The Ikonick defendants seek to file an Amended Answer to Provenzi's Counterclaims and Cross-Claims [29-4] adding an "Eight[h] Defense" that "Provenzi's Counterclaims and Cross-Claims are barred by the statute of limitations". Id. at 7.  They also seek to add a Rule 44.1 notice[9] that they intend to raise issues of foreign law.  Id. at 8.

Although Provenzi opposes the addition of the statute of limitations defense on substantive grounds - waiver, futility and prejudice - a more fundamental issue is whether the defense is properly pled.  The plausibility standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) "applies to determining the sufficiency of . . . the pleading of an affirmative defense, but with recognition that . . . applying the plausibility standard to any pleading is a 'context-specific' task. GEOMC Co. v. Calmare Therapeutics Inc., 918 F.3d 92, 98 (2d Cir. 2019). "[T]he relevant context will be shaped by the nature of the affirmative defense. For example, the facts needed to plead a statute-of-limitations defense will usually be readily available" (id.), and a party "must plead *some* facts in support of its affirmative defense". Pristine Jewelers NY, Inc. v. Broner, 492 F. Supp. 3d 130, 133 (S.D.N.Y. 2020) (emphasis added).

Here, the Ikonick defendants' proposed statute of limitations defense offers *no* facts in support of that defense.  Moreover, while they claim to be asserting a statute of limitations defense under Italian law (Ikonick defendants' Motion [29-2] at 3), that is not alleged in their proposed Amended Answer.  Therefore, I recommend that this proposed amendment be denied. However, I see no reason to deny their motion to amend their Answer to include a Rule 44.1 notice.

---

[9]      Rule 44.1 provides, in relevant part, that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing".

As they note, "[n]umerous Courts have held that [Rule] 44.1 notice may be properly provided in any reasonable manner, including via motion papers". Ikonick defendants' Reply Memorandum of Law [35] at 12 (citing authorities).  Likewise, the Advisory Committee Notes to the 1966 adoption of Rule 44.1 instruct that "[t]he liberal provisions for amendment of the pleadings afford help if the pleadings are used as the medium of giving notice of the foreign law; but it seems best to permit a written notice to be given outside of and later than the pleadings, provided the notice is reasonable. The new rule does not attempt to set any definite limit on the party's time for giving the notice of an issue of foreign law."  Therefore, this portion of the motion is granted.


## CONCLUSION

For these reasons, I recommend that Provenzi's motion for partial summary judgment [24] be denied, without prejudice to renewal after the Ikonick defendants are afforded an opportunity to conduct discovery, and that the Ikonick defendants' motion for leave to amend their Answer to Provenzi's Counterclaims and Cross-Claims [29] be granted to the extent that it seeks to include a Rule 44.1 notice, but otherwise be denied, without prejudice.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by January 26, 2022.  Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 12, 2022

<u>/s/Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge