JOHN M. PETERSON (NY BAR)
RICHARD F. O'NEILL (WA BAR)
MICHAEL K. TOMENGA (DC BAR)
LAWRENCE J. BOGARD (DC BAR)
JOHN A. DETZNER (DC & IL BARS)
JOHN B. TOTARO, JR. (DC BAR)
PATRICK B. KLEIN (NY BAR)

OF COUNSEL:
MARIA E. CELIS (NY & DC BARS)
JOHN P. DONOHUE (PA & DC BARS)
DONALD L. FISCHER (GA BAR)

# NEVILLE PETERSON LLP
COUNSELLORS AT LAW

ONE EXCHANGE PLAZA
55 BROADWAY, SUITE 2602
NEW YORK, NEW YORK 10006
———
T: (212) 635-2730 • F: (212) 635-0113
E: info@npwny.com

www.npllptradelaw.com

1400 16TH STREET, N.W., SUITE 350
WASHINGTON, DC 20036
T: (202) 861-2959
F: (202) 861-2924

999 THIRD AVENUE, SUITE 2525
SEATTLE, WA 98104
T: (206) 518-9335

TWO LOGAN SQUARE
100 N. 18TH STREET, SUITE 333
PHILADELPHIA, PA 19103
T: (267) 850-8730

May 22, 2023

**BY ELECTRONIC MAIL**
Hon. Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202
E: Jeremiah_McCarthy@nywd.uscourts.gov

>    Re:    Ikonick Defendants' Response to Plaintiff's Letter of May 11, 2023 Regarding Discovery Dispute in *United States of America, v. Paolo Provenzi, Ikonick Collections Ltd., and Mohammed Alsaloussi,* WDNY 21-CF-00398 (LJV) (JJM).

Dear Hon. Judge McCarthy,

We write in response to the letter of the Assistant United States Attorney ("AUSA"), dated May 11, 2023, regarding the discovery requests of Defendants Ikonick Collections Ltd. and Mohammed Alsaloussi (the "Ikonick Defendants"), subsequent Rule 37 letter, and recent proceedings before this Court. We appreciate the attention this Court is giving to the ongoing discovery disputes and are hopeful that our concerns can be adequately addressed.

In our original Rule 37 letter, we brought to light several critical issues that underscore the urgency of a complete disclosure of the disputed documents. In particular, we emphasized our client's need to assess the legality of the U.S. Customs and Border Protection (CBP) decision to seize the Vehicle, which hinges on whether the Vehicle was stolen. This issue lies at the heart of CBP's claims that this Vehicle was lawfully seized under 19 U.S.C. § 1627a.

The relevance and necessity of the documents in dispute were substantiated in our Rule 37 letter of December 13, 2022. These documents comprise internal communications within CBP and related correspondence contain information which directly pertains to the matter of the Vehicle's ownership and the process by which it was deemed stolen—a central point of contention in this action[1].

---

[1] These documents may also have a bearing on the unusual manner in which CBP officials proposed to convey the vehicle to Mr. Provenzi. While fully aware that the Ikonick defendants had title to the vehicle and had registered it with motor vehicle officials in Canada, CBP officials made no attempt—and to this date have made no attempt—to terminate the Ikonick Defendants' title through forfeiture proceedings. Rather, it appears that officials at CBP

Moreover, we highlighted that the Government and Defenant Provenzi have referenced unspecified information supposedly derived from records systems maintained by the Ferrari auto company, suggesting the Vehicle was stolen. However, supporting documentation or records substantiating this claim have not been disclosed. Likewise, CPB's reliance on information from the National Insurance Crime Bureau ("NICB") was also noted by the parties, but this information was not provided in discovery, and notably, NICB's stolen vehicle database does not list the Vehicle as stolen.

Defendant Provenzi's court filings have asserted that the theft of the vehicle was reported to INTERPOL. However, no formal INTERPOL report has ever been placed on the record. [The Government's records contain one document purporting to be from INTERPOL, but it is an obvious forgery]. The record contains statements, relayed to Customs, that the Danish police ran an INTERPOL report after CBP had seized the vehicle, and did not see the vehicle reported as stolen. It is unknown whether Customs itself ever searched the INTERPOL database or any other database with respect to the vehicle.[2]

The Government's assertion that "the information lacks relevance sufficient to outweigh the privileges asserted" warrants closer scrutiny. The documents in question are highly relevant to the heart of this action: the legality of the seizure and the ownership of the Vehicle. The importance of this information was acknowledged in precedents such as *Bergman v. Kemp*, 97 F.R.D. 413, 418 (W.D. Mich. 1983), and *Skibo v. City of New York*, 109 F.R.D. 58, 62-63 (E.D.N.Y. 1985), where the court ruled that evidence is necessary when it is primarily held by the opposing party and directly impacts the case's outcome.

We respect the importance of the privileges asserted by the AUSA, but we maintain that any concerns about the disclosure of sensitive law enforcement techniques or strategies could be addressed via more careful and targeted redactions or a robust judicial protective order. As indicated in our Rule 37 letter, a Judicial Protective Order is already in place in this case, and this can be expanded as required to protect sensitive information.

We appreciate the efforts of the AUSA in providing the Court with an unredacted version of the documents for an in-camera review. However, we wish to reiterate the concerns outlined in our Rule 37 letter regarding the inadequate and unresponsive nature of Plaintiff's responses to our interrogatories and requests for production. The Ikonick Defendants concerns continue to include:

1. <u>Inadequate and Unresponsive Discovery Responses</u>: As detailed in our Rule 37 letter, the Government's responses to our interrogatories and requests for production (RFPs) are insufficient and lack substantial context or detail. These responses have impeded our ability to conduct a thorough review and examination of the case at hand, specifically regarding CBP's determination under 19 U.S.C. § 1627a

---

Headquarters' Office of Regulations and Rulings (ORR) made arrangements to deliver the car to Mr. Provenzi while it was still titled to the Ikonick defendants—a disregard for constitutionally-required formalities.

[2] Since the INTERPOL stolen vehicle database is solely for the use of police agencies, the Ikonick Defendants cannot run such a search themselves.

2. <u>Relevance Objections</u>: The Government has objected to several interrogatories and RFPs on the basis of relevance without offering a compelling justification for these objections. Such objections are unfounded considering the contested information pertains directly to the crux of the case, i.e., whether the Vehicle was indeed stolen, as alleged by the CBP, and the determination of rightful ownership of the Vehicle. Such issues are inherently and undeniably relevant to the litigation, as recognized in *Bergman v. Kemp*, 97 F.R.D. 413, 418 (W.D. Mich. 1983).

3. <u>The Role of CBP</u>: Contrary to the Government's assertion, the determination by the U.S. Customs and Border Protection (CBP) is indeed relevant, even in light of its status as a stakeholder. As the entity responsible for the initial seizure of the Vehicle, any information used by CBP to form its conclusion under 19 U.S.C. § 1627a is of direct relevance and importance to the Ikonick Defendants.

4. <u>Importance of Evidence</u>: As we noted in our original letter, the discovery requested by the Ikonick Defendants is essential for establishing the legality of the seizure—an issue CBP cannot avoid—and for determining the ownership of the Vehicle. This information forms the very foundation of our defense, making it highly relevant and necessary for the case to proceed fairly.

5. <u>Privilege Objections</u>: The Government has cited several privileges, such as deliberative process privilege, law enforcement privilege, and attorney work product privilege as grounds for withholding information. Yet, as argued in our original letter, it is clear that these claims lack sufficient justification, especially in light of their absence from the Government's initial privilege log. Moreover, the Ikonick Defendants have asserted their specific need for this evidence, as was recognized in *Skibo v. City of New* York, 109 F.R.D. 58, 62-63 (E.D.N.Y. 1985).

Furthermore, we must address the Government's request for dismissal from this interpleader action, claiming to be a disinterested stakeholder. This assertion is considerably concerning. The U.S. Government, via CBP, was responsible for declaring the Vehicle stolen under 19 U.S.C. § 1627a and subsequently seizing it. This determination is not a neutral act but an affirmative declaration which forms the root of this litigation. The legality of the seizure is not conceded, but is instead a decision to be made by the Court.

To designate the government as "disinterested" in this matter is to misinterpret the stakes at play. The Ikonick Defendants are the only party in this litigation whose property has been seized by the Government. It is not only appropriate but necessary for the Government, who has taken this definitive action, to be subject to scrutiny and discovery.[3] To suggest otherwise overlooks the fundamental principles of due process and transparency that underpin our legal system.

---

[3] The Ikonick Defendants long ago made a claim and filed a cost bond with Customs, which triggers the obligation under 19 U.S.C. §§ 1603 and 1604 for Customs to promptly refer the matter to the United States Attorney for the commencement of forfeiture proceedings. Such referral has not yet occurred, nor has the Ikonick Defendants' cost bond been returned. The legality of the Government's actions would have been front and center in any forfeiture

The Ikonick Defendants are entitled to pursue all available avenues to ascertain the legality and legitimacy of the seizure, a pursuit that inevitably involves access to the information that informed CBP's decision. Therefore, the government's dismissal from this action would not serve the interests of justice but rather obfuscate the pivotal question of whether the seizure of the Vehicle was lawful under 19 U.S.C. § 1627a.

At this juncture of the case, the Court must consider the Government's role as more than that of a disinterested stakeholder. The government should remain a party through discovery and thereafter.

The Government has asked for additional time to respond to our Rule 37 letter after the conclusion of the in-camera review. However, we respectfully submit that any delay would hamper the discovery process and impact our clients' rights to a fair adjudication of their claims. We feel it is important to emphasize the protracted timeline of this discovery dispute—it has been over six months since the submission of our original Rule 37 letter to the Government. The continuous delays have directly impeded progress toward resolution of this case. Any further extension will only perpetuate the lack of resolution, an outcome that is not in the interest of either Defendant. Therefore, we urge the Court to ensure a swift process, with due regard for the importance of the requested discovery to the proceedings. Our discovery requests are both relevant and crucial to the resolution of this dispute, and we maintain our right to a full and complete response to the same. We respectfully request the Court to urge the AUSA to respond to our Rule 37 letter with alacrity (if any response is needed). We believe it is essential for the expeditious and just resolution of this case to resolve this dispute swiftly.

Thank you for your attention to this matter.

                                    Very truly yours,

                                    Neville Peterson LLP

                                    /s/ John M. Peterson
                                    John M. Peterson

CC:    Adam M. Levy, Counsel to Defendant Paolo Provenzi
           AUSA Mary Clare Kane, Counsel to Plaintiff
           AUSA Melanie J. Bailey, Counsel to Plaintiff

---

action, and should be at the forefront of this action as well. This is particularly so where the little evidence made available to the Ikonick Defendants suggests that CBP's investigation may have been cursory and deficient.