UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                        Plaintiff,

v.

PAOLO PROVENZI, IKONICK COLLECTION
LTD, and MOHAMMED ALSALOUSSI,

                        Defendants.

_____

**REPORT AND RECOMMENDATION**

1:21-cv-0398(LJV)(JJM)

        This interpleader action involves two competing claims of ownership to a valuable 1996 Ferrari F50 automobile registered to defendant Ikonick Collections Ltd. ("Ikonick"), an entity owned by defendant Mohammed Alsaloussi (collectively, the "Ikonick defendants"), that was seized by United States Customs and Border Protection ("CBP") in December 2019 while being transported by a commercial carrier from Canada into the United States. Complaint for Interpleader and Injunctive Relief [1], ¶¶6, 15.[1]

        Before the court is the Ikonick defendants' motion for the return of the vehicle [79], which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [22]. Having considered the parties' submissions [79, 83-85] and heard oral argument on September 29, 2023 [86], I recommend that the motion be denied.[2]

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]     Because the Ikonick defendants argue that the return of the vehicle to them will moot the interpleader action (Ikonick defendants' Brief [79-1] at 24), I have treated the motion as seeking dispositive relief.

## BACKGROUND

The parties' familiarity with the factual background is presumed. On April 8, 2020 CBP issued a Notice of Seizure ([79-3] at 19-23) stating that the vehicle was subject to seizure and forfeiture pursuant to 19 U.S.C. §1627a(a)(1)(A), which prohibits the knowing importation (or attempted importation) of any stolen vehicle. Thereafter, both Ikonick and defendant Paolo Provenzi filed petitions for remission with CBP pursuant to 19 U.S.C. §1618, each seeking the return of the vehicle. Id. at 38-41, 96. In July 2020, CBP denied Ikonick's petition for remission (id. at 136-41), but granted Provenzi's petition. Id. at 143-45.

This prompted the Ikonick defendants to tender a claim and cost bond to CBP in September 2020, with a request for an "immediate" referral of the matter to the United States Attorney for institution of judicial forfeiture proceedings. Id. at 149-52. Although the government commenced this interpleader action in March of 2021, to date it has not initiated a judicial forfeiture proceeding, nor has it formally sought interpleader relief in this action.[3]

In a letter to the court dated August 3, 2023 ([79-3] at 154-55), the government stated that because the Ikonick defendants question whether it is "a disinterested stakeholder in this action [as a result] of the $5,000 cost bond . . . , CBP will agree to release the cost bond once the . . . vehicle is released to the defendants' agreed upon third party custodian". Id. at 155 n. 4.[4]

---

[3]  "An interpleader action typically proceeds in two distinct stages. In the first stage, the court determines whether the various interpleader requirements have been met and whether interpleader is an appropriate remedy given the facts of the case - i.e., that jurisdictional requirements have been met, that the stakeholder has a legitimate fear of multiple litigation directed at a single stake, and that the claims are adverse to the stake and to one another. In the second stage, the court adjudicates the adverse claims of the various defendant claimants regarding entitlement to the res at issue." United States v. Armstrong, 2007 WL 4438924, *6 (S.D. Ind. 2007).

[4]  Following the August 4, 2023 proceeding I inquired with parties by e-mail about the court's subject matter jurisdiction. Although the Complaint premises subject matter jurisdiction on the existence of diversity of citizenship pursuant to 28 U.S.C. §1332 ([1], ¶1), I am satisfied that, as an action "commenced by the United States", subject matter jurisdiction exists pursuant to 28 U.S.C. §1345.

The Ikonick defendants interpret this statement as "definitively" indicating "that the [g]overnment has no ongoing interest in the [v]ehicle and no longer has any intention of pursuing its forfeiture". Peterson Affirmation [79-2], ¶13. Since "19 U.S.C. §1627a is the sole basis cited for the [v]ehicle's seizure", the Ikonick defendants argue that "the [g]overnment has no continuing right to retain possession of the seized property". Ikonick defendants' Brief [79-1] at 7.

The Ikonick defendants seek the return of the vehicle pursuant to Fed. R. Crim. P. ("Rule") 41(g) and as a result of an alleged due process violation arising from the government's delay in commencing a judicial forfeiture action.

## DISCUSSION

**A.    Rule 41(g)**

Rule 41(g) permits a party aggrieved by an unlawful seizure of property to move for the property's return:

> "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . . The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings."

"[W]here no criminal proceedings against the movant are pending or have transpired, a motion for the return of property is treated as a civil equitable proceeding even if styled as being pursuant to [Rule] 41(e) [now Rule 41(g)]." Mora v. United States, 955 F.2d 156, 158 (2d Cir. 1992). As an equitable remedy, Rule 41(g) relief "is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction". De Almeida v. United States, 459 F.3d 377, 382 (2d Cir. 2006).

Initially, the parties dispute whether Rule 41(g) relief is available to the Ikonick defendants. *See* Ikonick defendants' Brief [79-1] at 16; government's Response [83], ¶20. However, it is unnecessary for me to resolve that issue since, even if Rule 41(g) relief was available to the Ikonick defendants, they have failed to establish their entitlement to such relief.

Both parties agree that in order "[t]o prevail on a Rule 41(g) motion, the moving party must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." United States v. Seabrook, 2021 WL 965772, *2 (S.D.N.Y. 2021). *See* Ikonick defendants' Brief [79-1] at 12; government's Response [83], ¶23. Although the government argues that the Ikonick defendants have failed to meet their burden of proving any of these three elements by a preponderance of the evidence (*see* Government's Response [83], ¶¶25-27), it is unnecessary for me to address any element other than lawful possession.

The lawful possession requirement appears rooted in the objective of Rule 41(g) to "return . . . the [seized] property to its owner". Mora, 955 F.2d at 158. *See also* Green v. United States, 90 F. Supp. 2d 229, 230 (E.D.N.Y. 2000) ("[o]f course, a person who has stolen money or goods cannot have lawful possession of that property"). Whether the Ikonick defendants have established lawful possession of the vehicle is guided by Judge Vilardo's previous determination that under New York law, which applies to this dispute, a good-faith purchaser has no right to possess stolen property. *See* United States v. Provenzi, 2022 WL 2467658, *6 (W.D.N.Y. 2022) ("in New York, it is well settled that 'a thief cannot pass good title'", *quoting* Bakalar v. Vavra, 619 F.3d 136, 140 (2d Cir. 2010)). As Judge Vilardo explained, "if the alleged theft victims 'ma[ke] a threshold showing that they have an arguable

claim to the [property],' the burden is placed on 'the current possessor[ ] to prove that the [property] was not stolen.'" Id. at *11 (quoting Bakalar, 619 F.3d at 147).

Provenzi has made a threshold showing that he has an arguable claim to the vehicle. In granting Provenzi's petition for remission, CBP explained that it "confirmed with multiple parties that the vehicle was reported stolen in 2003, including the Italian police, Ferrari, and open source information", and that the vehicle was "not recovered following the theft until CBP interdicted it in 2019". See [79-3] at 145. The documentation provided to CBP by Meedo, an entity linked to Alsaloussi, even included a "letter from Interpol dated April 23, 2019 stating that the vehicle was stolen . . . and cannot be sold". Id. at 140.

The fact that vehicle was able to be exported from Japan and registered in Canada ([79-3] at 8) is *some* evidence that the car may not be stolen. However, the current record, which lacks any evidence casting doubt on the theft report, fails to establish by a *preponderance of the evidence* that the vehicle is not stolen.

While the Ikonick defendants contest the thoroughness of CBP's investigation (*see* Ikonick defendants' Reply [85] at 8 n. 5), they offer no evidence casting doubt on the veracity of the vehicle's reported theft. According to Provenzi (and not disputed by the Ikonick defendants), "the Ikonick [d]efendants' discovery efforts (to whatever extent they have been undertaken) have not yielded any evidence that the [v]ehicle was not stolen in 2003 . . . . [T]he Ikonick [d]efendants have not taken or otherwise pursued any deposition of either Provenzi, his brother, father, the Italian Authorities, Sabe, or anyone else for that matter". Provenzi's Memorandum of Law [84] at 9 (emphasis in original).

At most, the Ikonick defendants claim in a footnote of their Reply Brief [85] that certain unidentified "information has come to light indicating that the Vehicle was delivered to

the Ikonick defendants together with a large, likely original 'roof storage box' . . . and what appear to be two original sets of keys". Id. at 8 n. 5 (emphasis omitted). While this information may eventually develop into actual evidence that the vehicle is not stolen, it currently falls well short of meeting the Ikonick defendants' burden. I also do not find the government's offer to return the cost bond to the Ikonick defendants in order to counter the Ikonick defendants' claim that it remains an interested stakeholder (*see* August 3, 2023 letter [79-3] at 155 n. 4) to be "an abandonment of any allegation that the [v]ehicle is stolen". Ikonick defendants' Brief [79-1] at 13.

Finally, the Ikonick defendants attempt to equate their possessory interest in the vehicle with lawful possession (*see* Ikonick defendants' Brief [79-1] at 14-15), but as the government notes, these are "two different considerations". Government's Response [83] at 7. For example, in Seabrook, supra, the court explained that while "[t]he location of the $21,000 at the time of seizure indicates that Seabrook had a possessory interest over the money" and "therefore, has standing as an allegedly 'aggrieved' party under Rule 41(g)", he "fails to demonstrate that he is entitled to '*lawful* possession' of the seized $21,000". 2021 WL 965772 at *2 (emphasis in original). *See also* Ferreira v. United States, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005) (while "[p]ossession by a person is 'prima facie evidence of some kind of rightful ownership or title' . . . , [t]he movant is not entitled to the return of property under Rule 41(g) to which he cannot claim lawful possession").

Although the Ikonick defendants rely heavily on Moll Systems, Inc. v. United States, 2008 WL 11333091 (S.D. Fla. 2008), that case applied a different out-of-circuit test that requires a "possessory interest" in the seized property, rather than "lawful possession". *See* Moll, 2008 WL 11333091 at *3 ("[i]n order to prevail on its Rule 41(g) claim, Moll Systems must

show that it 'had a possessory interest in the property seized by the government' and that it has 'clean hands'" *quoting* United States v. Howell, 425 F.3d 971, 974 (11th Cir. 2005)).

The Ikonick defendants also place particular emphasis on the following quote from United States v. Wright, 610 F.2d 930, 939 (D.C. Cir. 1979): "when property is seized from a person, the court must return it to that person when it is no longer needed by the government". Ikonick defendants' Brief [79-1] at 12 (emphasis omitted). However, they ignore the subsequent qualifier that this principle applies "*[u]nless* there are serious reasons (presented by the government or adverse claimants) to doubt a person's right to the property seized from him". Wright, 610 F.2d at 939 (emphasis added). Since such doubts exist here, the Ikonick defendants have not established their entitlement to return of the vehicle under Rule 41(g).

**B.    Due Process**

The Ikonick defendants argue that CBP's "unreasonable delay in commencement of forfeiture proceedings constitutes a separate due process violation requiring the return of the vehicle to [them]". Ikonick defendants' Brief [79-1] at 18 (emphasis omitted). By opting to have CBP refer the matter to the United States Attorney for commencement of judicial forfeiture proceedings, the Ikonick defendants argue that they "trigger[ed] a *non-discretionary obligation* of the [g]overnment to either (i) initiate judicial forfeiture proceedings; or (ii) return the seized property to [them]". Peterson Affirmation [79-2], ¶11 (emphasis in original).

Pursuant to 19 U.S.C. §1608, the Ikonick defendants elected "judicial over administrative forfeiture through the filing of a claim and cost bond". Matter of Ninety-One Thousand Dollars in U.S. Currency, 715 F. Supp. 423, 434 (D.R.I. 1989). "After receiving the

claim and bond, the U.S. Attorney must either seek civil judicial forfeiture of the goods in federal court or decline to do so (in which case the goods are returned to the claimant)". LKQ Corp. v. United States, 2019 WL 3304708, *2 (D.D.C. 2019) (*citing* 19 U.S.C. §1608).  "An unreasonably long retention without instituting a forfeiture proceeding can constitute a denial of due process". Serrano v. Customs & Border Patrol, U.S. Customs & Border Protection, 975 F.3d 488, 498 (5th Cir. 2020).

Courts weigh four factors in determining whether the delay in filing a civil forfeiture action constitutes a due process violation: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant". United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency, 461 U.S. 555, 564 (1983). However, "none of these factors is a necessary or sufficient condition for finding unreasonable delay". Id. at 565.  They remain "guides in balancing the interests of the claimant and the [g]overnment to assess whether the basic due process requirement of fairness has been satisfied in a particular case". Id.

While the years long delay in instituting a forfeiture proceeding weighs in the Ikonick defendants' favor, the balance of the factors and the requirement of fairness do not.  The commencement of this action and the Ikonick defendants' recent decision to seek Rule 41(g) relief have given them timely access to courts and a means to challenge the seizure of the vehicle and obtain its return. *See* Omidi v. United States, 851 F.3d 859, 863 (9th Cir. 2017) ("[v]irtually all challenges to the government's basis for seeking forfeiture that could be raised in judicial forfeiture proceedings may be raised in proceedings under Rule 41(g)"); Matter of Ninety-One Thousand Dollars in U.S. Currency, 715 F. Supp. at 434 ("in litigating the civil forfeiture claim,

the parties will necessarily explore the very same issues basic to a Rule 41(e) [now Rule 41(g)] proceeding").

Although the Ikonick defendants argue that by initiating this interpleader they have been "den[ied] the[ ] the right to litigate the lawfulness of the taking" (Ikonick defendants' Reply [85] at 7-8), Rule 41(g) affords them the ability to do just that. *See* Seabrook, 2021 WL 965772 at *2 ("in order "[t]o prevail on a Rule 41(g) motion, the moving party must demonstrate [, *inter alia*,] that . . . either *the seizure was illegal* or the government's need for the property as evidence has ended (emphasis added)). As the government recognizes in its August 3, 2023 letter ([79-3] at 155), the Ikonick defendants also retain the right to challenge the seizure following the conclusion of the interpleader action. Id. ("any allegations as to unlawful seizure are premature. Once the Court determines ownership, the government reserves its right to defend the seizure of the vehicle, if necessary").

In any event, even if the Ikonick defendants could establish a due process violation, it is not clear that the return of the vehicle would be the appropriate remedy, particularly given the competing ownership claims. *See* United States v. One 1978 Cadillac Sedan de Ville, New York License Plate No. 533 JPY, 490 F. Supp. 725, 732 (S.D.N.Y. 1980) (generally, the remedy for such violations is to "bar the [g]overnment from obtaining forfeiture of the claimant's property" - relief not being sought in this action). Therefore, I conclude that Ikonick defendants have failed to establish a due process violation or their entitlement to the return of the vehicle.

## CONCLUSION

For these reasons, I recommend that the Ikonick defendants' motion for the return of the vehicle [79] be denied. Unless otherwise ordered by District Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by January 8, 2024. Any requests for extension of this deadline must be made to District Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: December 19, 2023

>       /s/Jeremiah J. McCarthy
>       JEREMIAH J. MCCARTHY
>       United States Magistrate Judge