UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                        Plaintiff,          **DECISION AND ORDER**

v.                                               1:21-cv-398-LJV-JJM

PAOLO PROVENZI, *et al.*,

                        Defendants.
_____

        In this interpleader action, which has been pending for over four years, interpleader defendants Paolo Provenzi, Ikonick Collection LTD and Mohammed Alsaloussi (collectively "Ikonick") each claim ownership of a 1996 Ferrari F50 automobile which was seized by the government. Ikonick now moves to extend the deadlines of my Third Amended Case Management Order [147][1] and to compel Provenzi to produce the keys to the Ferrari for inspection [151, 155].

        The motions have been referred to me by District Judge Lawrence J. Vilardo for initial consideration [22]. Being nondispositive, their determination is committed to my discretion. Daniels v. Daemen University, 2025 WL 1762202 at *3, n. 6 (W.D.N.Y. 2025); Smith v. Bradt, 329 F.R.D. 500, 502 (W.D.N.Y. 2019). For the following reasons, both motions are denied.

### BACKGROUND

        Familiarity with the relevant procedural history of this case is presumed. In a December 2, 2024 Decision and Order [132], Judge Vilardo denied Provenzi's motion for a

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

default judgment, notwithstanding Provenzi's claim that Ikonick had "delayed the discovery process". Id. at 7-8. However, mindful of "Provenzi's concerns about the Ikonick defendants' pace in discovery", he stated that he was "hopeful" that Ikonick's new attorneys would "hit the ground running and move things along", cautioning that "if they do not, Provenzi can seek the appropriate relief from this Court". Id. at 8, n. 4.

During a scheduling conference with counsel on February 3, 2025, I set a deadline of May 9, 2025 for completion of fact discovery [140, 142], and warned that "given the age of this case, I will be strongly disinclined to grant further extensions",[2] since by that time my original Case Management Order [48] had already been amended twice [54, 64]. I scheduled a further conference for May 7, 2025 to set the remaining pretrial deadlines.

On March 19, 2025, Provenzi supplemented his responses to Ikonick's first request for production of documents, attaching a photo of keys. [151-4] at 2-4. At his deposition on April 25, 2025, Provenzi testified that he "had, in his possession in Italy, keys to the vehicle." Ikonick's Memorandum of Law [151-1] at 3-4.

On May 2, 2025, Ikonick reported that "the only remaining discovery anticipated are depositions of two U.S. Customs and Border Protection" agents, whose "depositions are presently noticed for May 14, 2025 and May 15, 2025, requiring a short extension of the time to complete fact discovery". [144] at 1. Provenzi responded that "such depositions could have been noticed by the Ikonick Defendants long ago and were not. Due to the foregoing, since we have repeatedly expressed our preference to conclude discovery as soon as possible, and the Court expressed its unwillingness to further extend the deadlines absent compelling circumstances at

---

[2]   Transcribed from the audio recording of the conference.

the last conference, we cannot and do not acquiesce to the Ikonick Defendants' request in this regard". [145].

At the May 7, 2025 status conference, Ikonick's attorney, Sean O'Brien, again confirmed that the only remaining fact discovery which he sought was the depositions of the two CBP agents. Since those depositions were scheduled to occur beyond the May 9 deadline for completion of fact discovery, I denied that request. In response to my inquiry about deadlines for expert disclosure, Provenzi's attorney, Adam Levy, suggested that the parties discuss the issue and present me with a proposal, but O'Brien replied "let's do it now".[3]

We then agreed upon June 25, 2025 as the deadline for submission of initial expert disclosures, and my Third Amended Case Management Order confirmed that deadline, along with the May 9, 2025 deadline for completion of fact discovery. [147], ¶¶1, 2. That Order also warned the parties, in boldface type, that **"[n]o extension of the above deadlines will be granted except upon a motion, filed prior to the deadline, showing good cause for the extension. Absent truly exceptional circumstances, any motion for an extension shall be made at least one week prior to the deadline sought to be extended. The parties are reminded that "a finding of 'good cause' depends on the diligence of the moving party". Parker v. Columbia Pictures Industries, 204 F.3d 326,340 (2d Cir. 2000)".** Id. at 3.

Although O'Brien had assured me that fact discovery (other than the disallowed depositions of the CBP agents) was complete, at 4:32 p.m. that afternoon he e-mailed Levy, stating: "It is very likely that we are going to require inspection of your client's keys, that he testified he still has possession of. Please start making arrangements now to get them to your

---

[3]   Transcribed from recording of the May 7 conference.

office". [155-5] at 2. Levy did not respond to that request. Ikonick's Memorandum of Law [151-1] at 4.

By letter dated June 23, 2025 [148] - over six weeks after the deadline for fact discovery had expired, and merely two days before the deadline for expert disclosures - Ikonick requested a court conference. It explained that although it had "requested that Provenzi provide us with his keys on May 7, 2025", Provenzi "does not believe Ikonick's expert witness is entitled to physically inspect the keys . . . does not believe Ikonick's expert is entitled to physically inspect the vehicle; and . . . will not consent to modify the initial expert disclosure date so that these legal issues can be raised and decided by the Court". Id. at 1-2. The letter also stated that Ikonick would "file a motion seeking a modification of the initial expert disclosures, as it cannot complete its report and disclosure without the abovementioned inspections". Id. at 2.

Provenzi responded the next day, stating that "[w]e have never objected to Ikonick inspecting the Vehicle itself as long as that occurs prior to the current deadline. As far as the keys are concerned, to the extent that the Court directs us to turn them over, we will do so. Nevertheless, we maintain that there is no good cause to extend the current expert discovery deadline". [150].

On June 25, 2025 (the deadline for initial expert disclosures), Ikonick moved to extend that deadline to July 25, 2025. Ikonick's Memorandum of Law [151-1] at 2. During a teleconference with the parties on June 26, 2025 [153] I told the parties that while I had skimmed Ikonick's motion, I had not yet studied it. Therefore, I set a briefing schedule on the motion [152]. However, upon further review of the motion, I rescinded that schedule by Text Order dated June 30, 2025, stating that the motion was denied "for reasons to be discussed in a decision which will issue in due course" [154]. On July 1, 2025 (over seven weeks *after* the deadline for

-4-

completion of fact discovery), Ikonick moved to compel production of the keys to the vehicle. Ikonick's Memorandum of Law [155-1] at 2.

## DISCUSSION

Fed. R. Civ. P. ("Rule") 16(b)(4) provides that "[a] schedule may be modified *only* for good cause and with the judge's consent" (emphasis added). I have no discretion to ignore that requirement. "Disregard of the scheduling order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation, and its standards may not be short-circuited." Parker v. Columbia Pictures Industries, 204 F.3d 326, 340 (2d Cir. 2000). *See also* Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988) ("federal courts have no more discretion to disregard [a] Rule's mandate than they do to disregard constitutional or statutory provisions") and Nutraceutical Corp. v. Lambert, 586 U.S. 188, 192-93 (2019) ("[w]here the pertinent rule or rules invoked show a clear intent . . . courts are without authority to make exceptions").

As I cautioned the parties in my original, Amended, Second Amended, and Third Amended Case Management Orders [48, 54, 64, 147], in this Circuit "a finding of 'good cause' depends on the diligence of the moving party". Parker, 204 F.3d at 340. Thus, where a deadline "cannot reasonably be met despite the diligence of the party seeking the extension . . . . the court may grant leave to amend the scheduling order to extend the deadline". Id. "Diligence" entails a "[s]teady application to one's business or duty; [a] "persevering effort to accomplish something undertaken". Black's Law Dictionary (12th ed. 2024).

Ikonick suggests that "no party will be materially prejudiced by the proposed modification to the Scheduling Order", and argues that while the determination of good cause

"turns primarily on the diligence of the moving party", it "also includes the consideration of potential prejudice to the non-moving party". Ikonick's Memorandum of Law [151-1] at 3, 5. I disagree. Although in Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007) (decided years after Parker), the Second Circuit suggested that diligence "is not . . . the only consideration" in determining good cause and that "prejudice may also be considered", it is well settled that "a panel of [the] Court is bound by the decisions of prior panels until such times as they are overruled either by an en banc panel . . . or by the Supreme Court". United States v. Peguero, 34 F.4th 143, 158 (2d Cir. 2022).

Therefore, Kassner "cannot be interpreted as dispensing with Parker's requirement of diligence for a finding of good cause". Harris v. Speedway LLC, 349 F.R.D. 72, 78 (W.D.N.Y. 2025). See Gullo v. City of New York, 540 F. App'x 45, 47 (2d Cir. 2013) ("[t]hat defendants suffered no prejudice does not change the fact that plaintiffs failed to [act] with diligence . . . . [T]he absence of prejudice alone does not constitute good cause under Rule 16"); Callahan v. County of Suffolk, 96 F.4th 362, 370 (2d Cir. 2024) ("[w]hether good cause exists turns on the diligence of the moving party").

"In determining whether a party has been diligent, courts consider what information the party knew, or should have known, in advance of the deadline sought to be extended." Smith, 329 F.R.D. at 505. As previously noted, Provenzi supplemented his discovery responses by providing Ikonick with a photo of keys on March 19, 2025 - seven weeks prior to the deadline for completion of fact discovery.

Although Ikonick argues that the supplemental response was "silent as to whether the keys are to the vehicle or if they remain in the possession of Provenzi" (Ikonick's Memorandum of Law [151-1] at 4), it fails to explain why it did not ask Provenzi upon receiving

his supplemental response. "Knowledge of facts which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed . . . . The duty of inquiry having arisen, plaintiff is charged with whatever knowledge an inquiry would have revealed." Francabandiero v. National General Insurance Co., 2023 WL 2253194, at *7 (W.D.N.Y. 2023).

In any event, at his deposition on April 25, 2025 (still two weeks prior to the fact discovery deadline), Provenzi testified that the keys were in his possession in Italy - yet Ikonick failed to follow up on its request for them until May 7, 2025 (merely two days prior to the fact discovery deadline), and failed to move for an extension of the expert disclosure deadline until the deadline itself, June 25, 2025. "The filing of a request for an extension on the final day of the time period does not provide good cause for an extension of the deadline." Shemendera v. First Niagara Bank N.A., 288 F.R.D. 251, 253, n. 3 (W.D.N.Y. 2012). *See also* Gentner v. Navient Solutions, Inc., 2022 WL 3334269 at *2 (W.D.N.Y. 2022) ("despite the [Case Management Order's] explicit warning that 'absent truly exceptional circumstances, any motion for an extension shall be made at least one week prior to the deadline sought to be extended,' Gentner waited until . . . the fact discovery deadline[ ] to move for an extension, which certainly did not aid her cause").

Ikonick argues that it "had no reason to believe that Provenzi would not make the keys available until after the fact discovery deadline passed", because Provenzi "effectively gave Ikonick the distinct impression that there would be no objection to their production". Ikonick's Memorandum of Law [155-1] at 8, 10. However, even if Provenzi *had* consented to an extension of the deadline - and he did not - "absent good cause, [that] consent is irrelevant". Rupp v. City of Buffalo, 328 F.R.D. 69, 71 (W.D.N.Y. 2018); Century 21 Real Estate LLC v. Camden

Securities, Inc., 2013 WL 12058576 at *2 (C.D. Cal. 2013) ("the fact that the plaintiffs allegedly do not oppose the requested extension does nothing to show actual good cause for the extension").[4]

Ikonick further argues that "Provenzi never supplemented his response to Ikonick's Request for Production to confirm he was in possession of the keys", and that "the duty to supplement continues even after the discovery period has closed". Ikonick's Memorandum of Law [155-1] at 6, citing Rule 26(e). However, Rule 26(e) makes clear that the duty to supplement exists only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process". Here, Provenzi corrected his initial response by sending Ikonick a photo of the keys on March 19, 2025, and testifying on April 25, 2025 that he was in possession of the keys.

Both dates were sufficiently in advance of the fact discovery deadline to enable Ikonick to move to compel their production. Instead, it waited until over seven weeks past that deadline to move to compel. "[A] party ordinarily must file a motion to compel before the close of discovery and if it fails to do so, the motion will be deemed untimely." Novartis Pharma AG v. Incyte Corp., ___F.Supp.3d___, 2025 WL 1132303 at *5 (S.D.N.Y. 2025) (emphasis in original). Although "a motion to compel discovery may be filed after the close of discovery if the

---

[4] Ikonick's reliance upon Software Automation Holdings, LLC v. Ins. Toolkits, LLC, 2025 WL 1661557 (E.D.N.C. 2025) and Chambers v. Troy-Bilt, LLC, 2015 WL 11120592 (N.D. Tex. 2015) (Ikonick's Memorandum of Law [155-1] at 13-14) is unpersuasive. Neither case is from this Circuit, and both are distinguishable on their facts. In Software Automation, "[t]he parties . . . understood that the actual inspection of the respective source codes by experts could occur after the fact discovery period" (2025 WL 1661557 at *2), and in Chambers the parties "discussed possible dates for the inspection" *after* the deadline had expired, and the court allowed a post-deadline inspection because "Plaintiff's counsel engaged in conduct that caused defense counsel to believe that a re-examination would be permitted". 2015 WL 11120592 at *2.

movant establishes good cause . . . [a] finding of 'good cause' depends on the diligence of the moving party." Id. *See also* Ikonick's Memorandum of Law [155-1] at 10-11.

Therefore, where (as here) a party has not acted diligently in moving to compel, the motion is properly denied. See Richardson v. City of New York, 326 F. App'x 580, 582 (2d Cir. 2009) ("the district court did not abuse its discretion in denying Plaintiff's motion to compel discovery, which was filed over one month after the close of discovery, as untimely"

In determining whether preclusion of expert testimony is an abuse of discretion, courts consider "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir. 1997). Each will be considered:

**1. The party's explanation for the failure to comply with the discovery order.**

For the reasons discussed, Ikonick has offered no satisfactory explanation for its lack of diligence in meeting the deadlines of the Third Amended Case Management Order.

**2. The importance of the testimony of the precluded witness.**

Ikonick's expert has not yet formulated an opinion, since he has not inspected the keys. *See* Ikonick's Memorandum of Law [151-1] at 6 ("Ikonick's expert, upon a physical inspection of both sets of keys, will be able to make material determinations about the parts, accessories, and the vehicle itself that go to the heart of the dispute between the parties"). In fact, it is unclear whether Ikonick would even offer expert testimony. *See* id. ("the pending discovery dispute over the timing and scope of expert discovery will have a material impact on what, *if any*, expert report is ultimately exchanged by Ikonick") (emphasis added).

**3. The prejudice suffered by the opposing party.**

At the June 26, 2025 status conference, Levy stated that he submitted Provenzi's expert report by the June 25 deadline. Therefore, Ikonick has the benefit of his report without having to simultaneously exchange its own report.

**4. The possibility of a continuance.**

"The Federal Rules of Civil Procedure . . . should not be expanded by disregarding plainly expressed limitations." Schlagenhauf v. Holder, 379 U.S. 104, 121 (1964). Rule 16(b)(4) clearly conditions the modification of a scheduling order upon a showing of good cause - and since Ikonick has not made that showing, there is no possibility of a continuance.

**CONCLUSION**

For these reasons, Ikonick's motions [151, 155] are denied. Therefore, it may not continue fact discovery after May 9, 2025 (Third Amended Case Management Order [147], ¶1), nor may it offer any expert opinion which was due by June 25, 2025. Id., ¶2.

"While this may seem a harsh result, Rule 16(b)(4) requires a showing of good cause for an extension of [scheduling order] deadlines, and I have no power to rewrite the Rules." Villa v. Southwest Credit Systems, L.P., 2020 WL 3808911 at *4 (W.D.N.Y.), adopted, 2020 WL 3802936 (W.D.N.Y. 2020). "For the court to now say that it did not mean what it stated in the . . . Scheduling Order . . . would significantly undermine the court's authority and the reliance of counsel in other cases, subject to this court's scheduling orders, upon the integrity of such orders." Arnold v. Krause, Inc., 232 F.R.D. 58, 66 (W.D.N.Y. 2004), adopted, 233 F.R.D. 126 (W.D.N.Y. 2005).

As Judge Vilardo reasoned in Gentner, "[a] scheduling order entered by a court is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel

without peril . . . . [S]trict enforcement of the good cause requirement of Rule 16 may seem like unnecessarily strong medicine . . . . And insisting that parties meet strict deadlines for motions to extend may seem unnecessarily rigid as well. But . . . if the courts do not take seriously their own scheduling orders[,] who will?" 2022 WL 3334269, *3.

Dated: July 9, 2025

/s/Jeremiah J. McCarthy  
JEREMIAH J. MCCARTHY  
United States Magistrate Judge
